IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EFGROUPATL, LLC,<br><br>  Plaintiff,<br><br>vs.<br><br>EAT FIT GO HEALTHY FOODS, LLC,<br><br>  Defendant,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>  Garnishee. | 8:20-CV-286<br><br>**MEMORANDUM & ORDER** |

This matter comes before the Court on Plaintiff's Application to Determine Garnishee Liability, Filing 7. For the reasons stated herein, Plaintiff's Application will be granted in part.

### I. BACKGROUND

This is a garnishment action by which Plaintiff/Judgment Creditor, EFGroupATL, LLC ("EFGroupATL"), seeks to collect from Garnishee, Continental Casualty Company ("Continental"), a default judgment (the "Judgment") against Defendant/Judgment Debtor, Eat Fit Go Healthy Foods, LLC ("Eat Fit Go").

The Eat Fit Go concept "involves [franchise] retail locations that sell healthful, ready-to-eat meals that customers may either eat in an Eat Fit Go store or may take out and eat at home or work." Filing 1-1 at 3. EFGroupATL was interested in opening an Eat Fit Go franchise location in Atlanta, Georgia, and began initial discussions with Eat Fit Go regarding a potential franchise purchase in March 2016.[1] Filing 1-1 at 4. On April 20, 2016, Eat Fit Go sent EFGroupATL's

---

[1] Facts are taken from the Complaint in the default judgment action, Filing 1-1 at 3.

members a franchise disclosure document dated April 11, 2016 ("FDD"). In Item 19 of the FDD, Eat Fit Go stated that it did not provide financial performance representations and did not authorize employees to provide such representations. Filing 1-1 at 4. Also on April 20, 2016, Eat Fit Go sent EFGroupATL members "an email message with an attached spreadsheet showing what was represented to be the actual costs and revenues being realized by stores owned . . . in the Omaha, Nebraska area." Filing 1-1 at 4. On April 25, 2016, Eat Fit Go and EFGroupATL discussed the contents of the email and spreadsheet, and Eat Fit Go confirmed the projections provided were correct and reliable. Filing 1-1 at 4. EFGroupATL used the representations as a "basis for evaluating the potential profitability of the franchise, developing financial projections that they provided to lenders as well as to [Eat Fit Go's] representatives, and ultimately in deciding to invest in the Eat Fit Go system." Filing 1-1 at 5. Eat Fit Go amended its franchise disclosure document ("FDD 2") with an issuance date of June 29, 2016, and provided this amended FDD to EFGroupATL on August 4, 2016. Filing 1-1 at 5. Negotiations continued while Eat Fit Go searched for a location for a kitchen in Atlanta, and the parties signed an Area Development Agreement ("ADA") dated January 12, 2017. Filing 1-1 at 5. Under the ADA, EFGroupATL was to open thirteen stores over a period of three years, but the ADA did not specify a deadline for opening of the first store, did not require a certain number of stores to be opened before Eat Fit Go would open the kitchen necessary to supply meals, and did not indicate a convenience fee would be charged. Filing 1-1 at 5-6, 8.

EFGroupATL prepared to open its first store in August 2017. Filing 1-1 at 6. In July 2017, Eat Fit Go notified EFGroupATL that it would have to open three retail stores before Eat Fit Go would open the necessary kitchen. Filing 1-1 at 6. EFGroupATL postponed opening its first store and rushed the development of two other stores. Filing 1-1 at 6-7. Once they opened, the actual

2

results achieved by the three stores were "dramatically worse" than the financial performance representations provided by Eat Fit Go and did not achieve a profit as projected but instead incurred significant losses. Filing 1-1 at 7. EFGroupATL claims had it known the true nature of the profitability of the franchise, it would never have entered into an agreement with Eat Fit Go. Filing 1-1 at 8. Following the opening of the EFGroupATL Atlanta area locations, Eat Fit Go charged EFGroupATL what it called a "Convenience Fee." Filing 1-1 at 8. There is no Convenience Fee described in the FDDs, nor is any provision made for it in the ADA or the Franchise Agreements. Filing 1-1 at 8.

EFGroupATL filed a complaint against Eat Fit Go in the District Court of Douglas County, Nebraska, on July 30, 2019 (the "Complaint"). Filing 1-1. The Complaint asserted six causes of action against Eat Fit Go: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) breach of contract; (4) breach of the duty of good faith and fair dealing; (5) violation of the Nebraska Consumer Protection Act; and (6) violation of the Official Code of Georgia Annotated § 51-1-6. Filing 1-1. On November 7, 2019, the court granted EFGroupATL's motion for default judgment, entering judgment against Eat Fit Go and awarding damages in the amount of $3,277,241.92 to EFGroupATL. Filing 1-2 at 2. This amount reflected the amount claimed in EFGroupATL's proof of claim filed in the Eat Fit Go bankruptcy proceeding. Filing 16-1 at 2.

EFGroupATL contends that an insurance policy issued by Continental to Eat Fit Go (the "Policy") provides coverage for the Judgment.[2] Continental issued the Policy, EPack Extra Policy No. 596835000, to Eat Fit Go for the period of October 11, 2017, to October 11, 2019. Filing 9-1 at 21 & 78. The Policy contains two coverage parts: (i) a Directors and Officers Liability Coverage Part ("D&O") and (ii) a Miscellaneous Professional Liability Coverage Part ("MPL"). Filing 9-1

---

[2] Neither party addressed the issue of whether Continental was given proper notice of the lawsuit, and thus the Court concludes this is not an issue impacting coverage here.

at 21. The D&O Coverage contains an "insuring agreement" that grants coverage under limited circumstances. Filing 9-1 at 53.

EFGroupATL asserts that the Judgment against Eat Fit Go constitutes a covered loss under the D&O Coverage Part and therefore Continental, as the garnishee, is liable to EFGroupATL for the Judgment. Filing 7 at 2-3. Continental claims two exclusions under the D&O Coverage Part of the Policy independently bar coverage: the deliberate acts exclusion and the professional services exclusion. Filing 15 at 12. In the alternative, Continental argues a portion of the Judgment is not a covered loss under the D&O policy. Filing 15 at 15.

## II.  GARNISHEE STANDARD

The Nebraska garnishee statute, Neb. Rev. Stat. § 25-1030 et seq., was designed to create an expedited garnishment proceeding, protecting third parties from protracted litigation. *Huntington v. Pederson*, 883 N.W.2d 48, 57 (Neb. 2016) (citing *ML Manager v. Jensen*, 842 N.W.2d 566 (Neb. 2014)). Under Neb. Rev. Stat. § 25-1030.02, a garnishee is liable to a judgment creditor if "the garnishee was (1) indebted to the defendant, or (2) had any property or credits of the defendant[] in his possession or under his control at the time of being served with the notice of garnishment." "The plaintiff has the burden to establish why the garnishee was liable to the defendant at the time notice of garnishment was served." *Gerdes v. Klindt*, 570 N.W.2d 336, 342 (Neb. 1997). When the garnishee is an insurer, the question is whether the judgment obtained by the plaintiff against the defendant "constituted a loss of the nature insured against." *Bank of Mead v. St. Paul Fire & Marine Ins. Co.*, 275 N.W.2d 822, 824 (Neb. 1979).

## III.  ANALYSIS

EFGroupATL's application for garnishee liability is granted in part because EFGroupATL proved the Judgment is covered under the policy except for a portion of fees discussed below, and

Continental failed to prove the insurance policy's exclusionary language applies to the covered losses.

### A. Prima Facia Case

EFGroupATL met its burden to prove that the Judgment obtained against Eat Fit Go constituted a covered loss under the Policy issued by the garnishee, Continental. "The interpretation of an insurance policy presents a question of law . . . ." *Federated Serv. Ins. Co. v. All. Const., LLC*, 805 N.W.2d 468, 474 (Neb. 2011). The plaintiff carries the burden of proving the loss is covered under the insuring agreement of an in-force policy. *See Kaiser v. Allstate Indem. Co.*, 949 N.W.2d 787, 793 (Neb. 2020); *Cont'l Cas. Co. v. Emp. Ins. Co. of Wausau*, 60 A.D.3d 128, 134 (N.Y. App. Div. 1st Dept. 2008) (stating that to prove coverage under a policy, the insured had to show "that the actual injury occurred in the policy period and that it arose solely out of an ongoing operation"), *leave to appeal denied*, 918 N.E.2d 962 (N.Y. 2009); *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 856 (5th Cir. 2003) (stating that under Texas law, "[i]t is an insured's burden to put forth evidence that its claim against an insurer is within the policy's coverage").

EFGroupATL established the Policy exists and proved it by way of providing the Policy in its entirety including the declarations page. Filing 9-1 at 21. The Policy was originally in force from October 11, 2017, to October 11, 2018, and was subsequently extended until October 11, 2019. Filing 9-1 at 78. The Policy was in force when the claim was made.

The Policy's D&O[3] insuring agreement grants coverage as follows:

The Insurer shall pay on behalf of Insured Entity:

1. that **Loss**, in excess of the retention (if any) and up to the applicable limit of liability, resulting from any **Claim** first made during the Policy Period or the

---

[3] Defendant Continental argues that coverage for this Claim is not available under the MPL Coverage part of the Policy. Filing 15 at 12. Plaintiff does not dispute this or argue this point. Thus, the Court need not address this further.

>Extended Reporting Period, if applicable, against the Insured Entity for a **Wrongful Act**;

Filing 9-1 at 53 (bold in original).

The Policy defines "Loss" to include "damages, settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and Defense Costs for which the Insured is legally obligated to pay on account of a covered Claim." Filing 9-1 at 41. A "Claim" includes "a formal civil or criminal administrative or regulatory proceeding; against an Insured alleging a **Wrongful Act** . . . . Such Claim shall be deemed made on the earliest date of service upon, or other receipt by, any Insured of a complaint." Filing 9-1 at 35-36 (bold in original).

>Wrongful Act in the D&O Coverage Part is defined as:
>
>1. any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty (including violations of the privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA)) committed or attempted by:
>
>>a. the Insured Persons in their capacity as such; or
>>
>>b. the Insured Entity or by any natural person for whose Wrongful Act the Insured is legally responsible; or,
>
>2. any matter claimed against the Insured Persons solely by reason of their serving in such capacity.

Filing 9-1 at 51.

The Judgment on EFGroupATL's underlying Complaint was a loss resulting from a claim for a wrongful act. The underlying Complaint alleged misrepresentation, misstatement, misleading statement, omission, and neglect on the part of Eat Fit Go, the insured entity, and persons for whom Eat Fit Go is legally responsible. Filing 9-1 at 8-11. The Complaint was a civil proceeding against Eat Fit Go that resulted in a judgment being ordered against Eat Fit Go on the basis of a wrongful act. Accordingly, EFGroupATL met its burden of proving a covered loss under the Policy.

6

Additionally, Continental did not argue EFGroupATL failed to meet its burden of establishing coverage under the Policy with a limited exception. As an alternative method of proving coverage, EFGroupATL asserts that because Continental's arguments to avoid liability, explained in greater detail below, rely solely upon policy exclusions, Continental essentially waived the argument that the default judgment itself was not covered under the Policy. Stated another way, EFGroupATL argues that by focusing solely on exclusions to the policy, Continental conceded the claims were covered by the Policy as long as the exclusions did not apply. EFGroupATL did not provide case law to support this assertion, and the Court was unable to locate relevant precedent. However, based on a review of basic insurance law and insurance policy coverage, this assertion has merit.

"Coverage is created solely by the insuring agreements in insurance policies. All that exclusions do is eliminate portions of the coverage created by the insuring agreements." Allan Windt, 2 Insurance Claims and Disputes, § 9.1 (April 2020 6th ed.). An exclusion in an insurance policy acts "as a limitation of liability, or carving out certain types of loss, to which the insurance coverage never applied." *D & S Realty, Inc. v. Markel Ins. Co.*, 789 N.W.2d 1, 10 (Neb. 2010). Stated another way, "parties have no reason to exclude a particular matter from coverage in an insurance policy if they did not intend that the policy initially granted coverage for that matter." *U.S. Bank Nat'l Ass'n v. Indian Harbor Ins. Co.*, 68 F. Supp. 3d 1044, 1051 (D. Minn. 2014), *amended*, No. 12-CV-3175, 2015 WL 12778848 (D. Minn. Mar. 19, 2015).

Because Continental argues that the deliberate-acts and professional-services exclusions apply to EFGroupATL's claim, Continental implies that but for the exclusions, the claim was covered under the policy. Accordingly, EFGroupATL has shown that the Judgment was a covered loss under the Policy.

Although the Judgment is a covered loss under the policy, EFGroupATL is not entitled to the full amount because the fees paid by EFGroupATL are uncovered losses as violations of a written contract. The policy states a Loss does not include "any amounts arising out of the Insured's actual or alleged violation of any written contract or agreement or due to the Insured's assumption of the liability of others under any contract or agreement." Filing 9-1 at 65. As previously noted, the plaintiff or insured bears the burden of proving coverage under an insurance policy. *Poulton v. State Farm Fire and Cas. Co.*, 675 N.W.2d 665, 670 (Neb. 2004). EFGroupATL asserts that the imposition of fees constitutes damages flowing from Eat Fit Go's misrepresentations, not a breach of a written contract. Filing 20 at 11. Continental argues that the imposition of fees not required under the Area Development Agreement or the Franchise Agreement is a violation of a written agreement between Eat Fit Go and EFGroupATL. Filing 15 at 21. EFGroupATL fails to provide any case law or support for its assertion that the fees are damages flowing from Eat Fit Go's misrepresentations. The Court concludes the Loss definition endorsement does not include the fees as payable. Since EFGroupATL bears the burden, the Court finds that EFGroupATL failed to prove coverage for the three fees contested by Continental: Area Development Fee ($450,000), Royalties and Fees ($23,500), and Convenience Fee ($81,837). Filing 15 at 22. Therefore, unless the exclusions apply, Continental is liable to EFGroupATL for $2,722,354.92, the Judgment of $3,277,241.92 less the fees totaling $554,887. Filing 20 at 12.

### B. Exclusions

Continental argues that the deliberate-acts and professional-services exclusions apply to EFGroupATL's claim. The Court finds Continental failed to meet its burden to prove that any of the Policy's exclusions apply to the Judgment. The deliberate-acts exclusion does not apply to the claim made by EFGroupATL because the underlying facts do not support a determination that the

misrepresentations were made "with actual knowledge of its wrongful nature or with intent to cause damages." Filing 9-1 at 54. Additionally, the professional-services exclusion does not apply because the misrepresentations were not made for the benefit of EFGroupATL but to induce EFGroupATL to pursue a franchise with Eat Fit Go. Because neither policy exclusion applies, Continental is liable under the Policy for the Judgment.

"The burden to prove that an exclusionary clause in a policy applies rests on the insurer." *Fokken v. Steichen*, 744 N.W.2d 34, 41 (Neb. 2008). "Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." *Gage Cnty. v. Emps. Mut. Cas. Co.*, 937 N.W.2d 863, 873 (Neb. 2020) (citing *Safeco Ins. Co. of Am. v. Husker Aviation, Inc.*, 317 N.W.2d 745 (Neb. 1982)). "When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them." *Id.* (citing *Am. Fam. Mut. Ins. Co. v. Hadley*, 648 N.W.2d 769 (Neb. 2002)); *see also Henn v. Am. Fam. Mut. Ins. Co.*, 894 N.W.2d 179, 184 (Neb. 2017) ("Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning."). "The language should be considered not in accordance with what the insurer intended the words to mean but according to what a reasonable person in the position of the insured would have understood them to mean." *Henn*, 894 N.W.2d at 184. "When an insurance contract is ambiguous, we will construe the policy in favor of the insured." *Id.* "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting meanings." *Id.* "While an ambiguous insurance policy will be construed in favor of the insured, ambiguity

9

will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract." *Id.*

1. *Deliberate-Acts Exclusion*

The deliberate-acts exclusion states that Continental shall not be liable to pay any Loss under this Coverage Part in connection with any Claim made against any Insured where:

> b. such Insureds committed any fraudulent or criminal Wrongful Act *with actual knowledge of its wrongful nature* or *with intent to cause damage*,
>
> as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding.

Filing 9-1 at 54 (emphasis added).

Under the present circumstances, the facts included in the underlying Complaint are used to determine whether an exclusion applies. "When a default judgment is entered, facts alleged in the complaint may not be later contested." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). Facts that were deemed admitted through a default judgment in the underlying litigation are the basis for the determination of whether the duty to indemnify exists. *Doe v. Ins. Co. of the State of Penn.*, 363 F. Supp. 3d 1358, 1364 (S.D. Fla. 2018). Thus, in a later action to enforce the underlying default judgment, the only issue is "whether [the insurer] has a duty to indemnify based on these facts deemed admitted." *Id.*

The deliberate-acts exclusion language is not ambiguous and, applied to the facts asserted in the underlying Complaint, does not exclude coverage for the Judgment. To fall within the language of the exclusion, a representation must be made "with actual knowledge of its wrongful nature or with intent to cause damage." A reasonable person would understand the exclusion to mean that Eat Fit Go would have either needed to actually know it was providing

misrepresentations or to have intended to cause damage to EFGroupATL.[4] EFGroupATL pled the "[r]epresentations [regarding the financial performance of other Eat Fit Go outlets] were false and were either known to be false *or were made recklessly* as a positive assertion without knowledge of their truth."[5] Filing 1-1 at 8 (emphasis added). The deliberate-acts exclusion only applies if the actor had actual knowledge of the act's wrongful nature or acted with intent. The facts or allegations in the underlying Complaint do not support such a finding because they state Eat Fit Go may have acted only recklessly, a lesser standard than "with actual knowledge." The Judgment therefore does not fall under the deliberate-acts exclusion.

Continental cites a non-binding authority, *Collins Holding Corp. v. Wausau Underwriters Insurance Co.*, 666 S.E.2d 897, 900 (S.C. 2008), in support of an argument that a state court's determination of fraud applies equally to the negligent misrepresentation cause of action, thereby bringing EFGroupATL's entire claim under the deliberate-acts exclusion. However, the court in *Collins Holding* did not hold that an underlying determination of fraudulent misrepresentation applies equally to all negligent misrepresentation claims. Instead, the court held that it must look beyond the labeled causes of action used by the parties must instead look to the underlying facts of the complaint to determine whether there was a duty to defend or indemnify. *Id.* at 899. In *Collins Holding*, the plaintiffs alleged eight causes of action including RICO violations, fraud and

---

[4] The Court is aware of the Supreme Court of Nebraska's holding in *Columbia National Insurance v. Pacesetter Homes*, 532 N.W.2d 1 (Neb. 1995). The court found it immaterial whether there was intent to cause harm on the part of the insured, instead finding that the intentional act was sufficient to preclude coverage. 532 N.W. 2d at 12. *Pacesetter* is distinguishable because the Nebraska court was determining the definition of "occurrence" and whether it was a covered loss under the insuring agreement. Here, the policy exclusion is unambiguous and only applies if Eat Fit Go had an intent to cause damage. The Court does not read ambiguity into the language in order to construe it differently.

[5] When two potential factual scenarios are plead, such as the misrepresentations were known to be false or were made recklessly as a positive assertion without knowledge of their truth, both are accepted as true. *Doe v. Ins. Co. of the State of Penn.*, 363 F. Supp. 3d 1358, 1365 (S.D. Fla. 2018) ("Thus, both potential factual scenarios—that CSOA did know or that it did not know but should have known—are accepted as true. Accordingly, because the standard requires actual knowledge of current or past abuse, the Underlying Complaint does not support a sole finding that CSOA expected or intended the harassment.").

deceit, Unfair Trade Practices Act violations, civil conspiracy, and negligent misrepresentation. *Id.* at 900. In asserting negligent misrepresentation, the plaintiffs "incorporated previous facts and alleged [the insured] sold, leased, and distributed machines that were equipped in a manner as to permit manipulation and that were configured to be used in a manner that violated laws expressly designed to protect the public from the lure of excessive gambling." *Id.* The underlying complaint asserted facts that the defendant had systematically violated state laws regarding gambling machine payout limits, using words such as "unlawfully and fraudulently seek to induce and entice; engaged in advertising about and offering inducements . . . that are clearly and expressly prohibited by South Carolina law; racketeering activity; conspiring; knowingly engaging; and knowingly conducting." *Id.* at 899. Based on this language, the court held that the deliberate-acts exclusion applied to the underlying claim because the facts and allegations in support of the negligent misrepresentation claim did not indicate negligence on the part of the defendant, but demonstrated intentional, fraudulent actions. *Id.*

This case is distinguishable from *Collins Holding* because the Complaint does not allege systematic manipulation of state law or similarly insidious, intentionally criminal motivations. The FDD stated "[Eat Fit Go] does not provide financial performance representations and does not authorize employees to prove such representations." Filing 9-1 at 4. Nevertheless, Eat Fit Go later sent EFGroupATL a spreadsheet with representative costs and revenues of stores in the Omaha, NE area. Filing 9-1 at 4. EFGroupATL alleged the spreadsheet constituted a "false representation." Filing 9-1 at 5. In its fraudulent-misrepresentation cause of action, EFGroupATL asserted that "the representations were false and were either known to be false or were made recklessly as a positive assertion without knowledge of their truth." Filing 9-1 at 8. In its negligent misrepresentation cause of action, EFGroupATL, alleged that "the representations were false and were either known to be

false or were made recklessly or negligently as a positive assertion without knowledge of their truth." Filing 9-1 at 9. Unlike the complaint in *Collins Holding*, the underlying Complaint asserted facts and allegations supporting EFGroupATL's negligent-misrepresentation cause of action as a plausible alternate theory to its fraudulent-misrepresentation claims. Accordingly, the facts and allegations in the underlying Complaint do not preclude a finding of negligence or recklessness and therefore do not fall within the deliberate-acts exclusion.

Continental further argues that the deliberate-act exclusion applies in this case because under the terms of the Policy, the entire Complaint is a single claim, and the deliberate-acts exclusion applies to the entire Judgment. Filing 15 at 14. Continental's attempt to avoid coverage through this argument fails. The Policy defines a Claim as "a civil or criminal proceeding in a court of law or equity or any alternative dispute resolution proceeding; against an Insured alleging a Wrongful Act." Filing 9-1 at 35-36.[6] Although the Court agrees that this matter is indeed a "civil proceeding" thus would constitute a single Claim under the Policy, the fact remains that the Court has concluded that even the fraud claim does not fall within the deliberate acts exclusion in this case. Further, it is well-settled law that even if one claim is excluded from coverage, other claims may still be covered. *See Malone v. Kantner*, 4:12-CV-3190, 2015 WL 5156861, at *16 (D. Neb. Sept. 2, 2015) ("A cause of action is defined as the set of facts that allegedly entitles a plaintiff to relief. A plaintiff may ordinarily plead multiple theories of recovery for the same cause of action. However, a plaintiff may not recover damages more than once for a given cause of action." (citations omitted)). However, the Court finds this to be a distinction without a difference. Under the Policy's Insuring Agreement, Continental must pay losses resulting from claims made against Eat Fit Go for a Wrongful Act. Filing 9-1 at 53. The Complaint makes many claims, with only one

---

[6] Although this lawsuit is one "Claim" under the Policy, each "claim" in the lawsuit, which are enumerated 1 through 6 in the Complaint, constitutes a separate cause of action.

of the claims alleging fraud. The Court has concluded that the fraud claim is not excluded by the deliberate-acts exclusion.

### 2. *Professional-Services Exclusion*

Continental next argues the professional-services exclusion should apply. The Court concludes the professional-services exclusion is unambiguous and does not apply to the Judgment because the service was not done for the benefit of EFGroupATL. Furthermore, to the extent that "professional services" could be an ambiguous term, Continental failed to prove that the misrepresentations would qualify as a professional service.

The professional-services exclusion states:

> The Insurer shall not be liable to pay any Loss under this Coverage Part in connection with any Claim made against any Insured:
>
> Based upon or arising out of any Wrongful Act in connection with the performance of professional services by or on behalf of the Insured Entity for the benefit of any other entity or natural person; provided, however, this exclusion shall not apply to any Claim which alleges that any Executive, in his or her capacity as such, failed to supervise those who performed such professional services.

Filing 9-1 at 56. The Policy does not define "professional services."

Giving the terms their plain and ordinary meaning, a reasonable person would understand that, for the exclusion to apply, the professional services being rendered must be for the benefit of another "entity or natural person." Continental argues that sending the spreadsheets was a professional service and the exclusion applies. However, regardless of whether Eat Fit Go had specialized knowledge regarding the franchise it was selling, Continental fails to prove how the spreadsheets were "for the benefit" of EFGroupATL. The underlying Complaint alleged that the spreadsheets were not sent to assist EFGroupATL in making revenue predictions. Indeed, Item 19 of the FDD precluded Eat Fit Go from making financial performance representations. Filing 1-1 at 4. The Complaint alleged that Eat Fit Go provided the spreadsheet during the negotiation to

14

induce EFGroupATL to buy a franchise. In sum, the actions that Continental alleges were "professional services" were rendered for Eat Fit Go's own benefit, not for the benefit of EFGroupATL.

Alternatively, to the extent that the term "professional services" could be ambiguous, it is strictly construed against Continental. "When an insurance contract is ambiguous, [the court] will construe the policy in favor of the insured." *Henn*, 894 N.W.2d at 184. Continental urges the Court to adopt the "professional services" definition provided in prior Nebraska cases: a service or act "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *Marx v. Hartford Accident & Indem. Co.*, 157 N.W. 2d 870, 872 (Neb. 1968). This definition has been used extensively in other professional-services exclusion cases in Nebraska and other jurisdictions, and EFGroupATL does not dispute the use of this definition. *Am. Econ. Ins. Co. v. Jackson*, 476 F.3d 620, 625 (8th Cir. 2007) (Missouri and Illinois law); *Multnomah County v. Or. Auto. Ins. Co.*, 470 P.2d 147, 150 (Or. 1970) (Oregon law); *Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc.*, 820 F.3d 36, 42 (1st Cir. 2016) (Massachusetts law). However, using the *Marx* definition of professional services does not bring the underlying facts within the professional-services exclusion. Continental provides no case law, and the Court was unable to identify any binding precedent in which misrepresentations made during the course of a negotiation were deemed excludable as professional services.

The Court identified one case, from another jurisdiction, that involved misrepresentations made during negotiations wherein the professional-services exclusion applied. In *Pekin Insurance Co. v. L.J. Shaw & Co.*, 684 N.E.2d 853 (Ill. App. 1997), the court found the professional-services exclusion applied to the actions of an independent insurance adjuster because the adjuster was

15

specifically retained to perform professional services. *Id.* at 896. In *Pekin*, the adjuster allegedly sought to induce the premature termination of a business relationship through fraudulent misrepresentations. *Id.* at 854, 859. The court held that the professional-services exclusion applied because the complaint specifically alleged that the adjuster was retained "as persons experienced with insurance claims negotiations and adjustments." *Id.* at 858. The adjuster was "asked to draw on their specialized training, knowledge, and skill" in working on the claim at issue. *Id. Pekins* is distinguishable to this case because EFGroupATL did not hire Eat Fit Go for potential revenue projections. Eat Fit Go did not provide the spreadsheet as a professional service; instead Eat Fit Go provided the spreadsheet while engaged in ongoing negotiations while attempting to induce EFGroupATL to purchase a franchise.

The burden to prove the professional-services exclusion applies is on Continental. Continental failed to make a case for expanding the professional-services exclusion to the spreadsheet provided by one party to another in an attempt to induce a purchase. Additionally, as the exclusion reads, the wrongful acts must have been done "for the benefit of any other entity or natural person." Continental failed to meet its burden to show how these acts were done for the benefit of EFGroupATL. The Court declines to expand the professional-services exclusion to the representations made during the course of a negotiation.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Application to Determine Garnishee Liability is granted in part. Accordingly,

IT IS ORDERED:

1. Plaintiff's Application to Determine Garnishee Liability, Filing 7, is granted in part in the amount of $2,722,354.92; and

2. A separate judgment will be entered.

Dated this 21st day of December, 2020.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge